The NATIONAL SUGAR REFINING COMPANY To The Use of Louis B. SANDLER, Doing Business as Sandler Brothers Company

v.

UNITED STATES.

No. 125–54.

United States Court of Claims.

May 7, 1958.

Benjamin M. Altschuler, New York City, for plaintiff. Altschuler & Morrison, New York City, were on the brief.

Jerome S. Hertz, Washington, D. C., with whom was Asst. Atty. Gen. Charles K. Rice, for defendant. James P. Garland, Washington, D. C., was on the brief.

JONES, Chief Judge.

The National Sugar Refining Company, a New Jersey corporation engaged in the manufacture of refined sugar, brings this action for the use of Louis B. Sandler, a sugar broker doing business under the trade name of Sandler Brothers Company. Plaintiff's petition sets forth a claim for the refund of taxes paid under the manufacturers' excise tax imposed by section 3490 of the Internal Revenue Code of 1939, 26 U.S.C. § 3490. The issue presented is one of law as to whether plaintiff is entitled to a refund of the amount it paid as manufacturers' excise tax upon sugar manufactured and sold by plaintiff for resale as vessels supplies.

During the years 1948, 1949, and 1950 plaintiff manufactured 1,129,584 pounds of refined sugar. This amount of sugar was sold, during the period July 29, 1948, to December 28, 1950, to Sandler Brothers Company for resale to various steamship companies for use as vessels supplies. Prior to its delivery, Sandler Brothers Company resold the 1,129,584 pounds of sugar to these shipping com-

panies; and thereafter, the National Sugar Refining Company acted pursuant to the instructions of Sandler Brothers Company in delivering the manufactured sugar to various vessels for the account of that company. The vessels receiving the sugar were engaged in the trades specified in section 309 of the Tariff Act of 1930, c. 497, 46 Stat. 590, 690, as amended (19 U.S.C.A. § 1309).[1] The sales agreements consummated between Sandler Brothers Company and the steamship companies provided that the sugar was to be used only as vessels supplies; and the sugar was laden aboard the vessels under the supervision of the Collector of Customs for such use.

The National Sugar Refining Company paid, in the amount of $6,034.31, the manufacturers' excise tax imposed by section 3490 of the Internal Revenue Code of 1939 upon the 1,129,584 pounds of manufactured sugar. Included in the purchase price which has been paid by Sandler Brothers Company to the plaintiff was the sum of $6,034.31, representing the tax imposed. The plaintiff therefore brings this action, after the rejection of its timely claim for refund, for the use of Louis B. Sandler, doing business as Sandler Brothers Company.

■ Chapter 32 of the Internal Revenue Code of 1939 (section 3490 et seq.), imposing a tax upon the manufacture of sugar, was originally enacted as a part of the Sugar Act of 1937, 50 Stat. 903, 913, 26 U.S.C. § 3490. A number of exemptions from the taxing provisions are specifically provided for in the code; viz, the manufacture of sugar for consumption by the manufacturer's family, employees, or household (section 3490(b)); the manufacture of sugar which is ultimately exported from the United States (section 3493(a)); or the manufacture of sugar used as livestock feed or for distillation of alcohol (section 3494(a)).[2] However, the code is silent insofar as an exemption with respect to the manufacture of sugar resold for use as vessels supplies is concerned. Nevertheless, plaintiff brings this action claiming such an exemption based upon its interpretation of section 3496, which provides as follows:

"§ 3496.  Other laws applicable

"All provisions of law, including penalties, applicable with respect to the taxes imposed under Subchapter A of chapter 29, shall, insofar as applicable and not inconsistent with the provisions of this chapter, be applicable in respect to the tax imposed by section 3490."

Referring to chapter 29, subchapter C, section 3451 of the Internal Revenue Code of 1939, which contains the vessels supplies exemption relating to excise taxes imposed upon the sale of various commodities by the manufacturer, plaintiff urges this court to give effect to the carry-over provision of section 3496 by incorporating that exemption within the provisions of chapter 32. In support of its position, the plaintiff looks to the legislative history of the Act of June 16, 1933, 48 Stat. 256, which, with amendment, became section 3451 of the Internal Revenue Code of 1939.[3] The policy underlying the vessels supplies exemption is

1. By reason of section 309 of that act, plaintiff filed claims with the Bureau of Customs of the Treasury Department for drawback of the import duty upon sale of the sugar for use as vessels supplies. These claims were duly allowed by the Bureau of Customs, and are not here in issue.

2. Plaintiff does not claim an exemption based upon the argument that the manufactured sugar sold for use as vessels supplies comes within the "export" exemption of section 3493(a). In Swan &

Finch Co. v. United States, 190 U.S. 143, 23 S.Ct. 702, 47 L.Ed. 984, that argument was disposed of when the Supreme Court held that lubricating oils placed on board vessels bound for foreign ports for use as vessels supplies was not such an "exportation" of the oils as to entitle the seller to a drawback of import duties under section 22 of the act of August 27, 1894, 28 Stat. 509, 551.

3. Section 3451 of the Internal Revenue Code of 1939, 48 Stat. 256, 26 U.S.C. § 3451, sets forth the vessels supplies exemption with respect to the manufac-

briefly stated in Senate Report No. 58, 73d Congress, 1st Session, as follows:

"Your committee has inserted a new Section 5 providing for exemption from the manufacturer's excise taxes under the Revenue Act of 1932 of articles sold for use as supplies or equipment on vessels of war, vessels employed in the fisheries or whaling business, or actually engaged in foreign trade or trade between the Atlantic and Pacific ports of the United States or between the United States and any of its possessions. It is believed that this amendment will enable American manufacturers to compete more favorably with their foreign competitors for this business without any substantial loss of revenue since the effect of the present law is to force purchases abroad. The bill also provides for allowance of drawback on articles manufactured or produced with the use of merchandise on the importation of which tax has been paid under the Revenue Act of 1932, when such articles are laden for use as supplies on vessels of the classes enumerated. This also relieves American manufacturers from a competitive disadvantage."

This desire on the part of Congress to lessen a competitive disadvantage to American manufacturers selling articles for use as vessels supplies must be recognized, argues the plaintiff, as accompanying the enactment of the Sugar Act of 1937, supra.

We experience difficulty, however, in subscribing to plaintiff's contentions. Though admittedly indecisive of the precise question now before us, comments found in House Report No. 1179, 75th Congress, 1st Session, a report accompanying H.R. 7667 (the Sugar Act of 1937), appear, if anything, to weaken, rather than substantiate the position of plaintiff:

"Taxing Provisions

"Title IV contains the tax provisions. Provision is made for an excise tax of one-half of 1 cent per pound on sugar derived from sugar beets and sugarcane, except sugar in liquid form which contains nonsugar solids (excluding foreign substance that may have been added) equal to more than 6 percent of the total soluble solids (sec. 402). A further provision is made for an equivalent tax on sugar imported into this country (sec. 403). The taxes are imposed not only with respect to sugar sold but also that which is used in the production of other articles. The taxes are collected by the Secretary of the Treasury. *The tax paid on domestic sugar is authorized to be refunded if such sugar is exported, or shipped to any possession of the United States, except Puerto Rico, or used for livestock feed.* An amendment proposed by the committee subjects sugar in liquid form intended for distillation of alcohol to the taxing provisions." [Emphasis supplied.]

turers' excise tax imposed on the sale of various articles listed in subchapter A and the tax imposed on the importation of commodities listed in subchapter B of chapter 29. Section 3451 provides in part as follows:

"§ 3451. Exemption from tax of certain supplies for vessels.

"Under regulations prescribed by the Commissioner, with the approval of the Secretary, no tax under this chapter shall be imposed upon any article sold for use as fuel supplies, ships' stores, sea stores, or legitimate equipment on vessels of war

of the United States or of any foreign nation, vessels employed in the fisheries or in the whaling business, or actually engaged in foreign trade or trade between the Atlantic and Pacific ports of the United States or between the United States and any of its possessions. Articles manufactured or produced with the use of articles upon the importation of which tax has been paid under this chapter, if laden for use as supplies on such vessels, shall be held to be exported for the purposes of section 3430 * * *."

This brief explanation of the effect of Title IV of the Sugar Act of 1937, when read in conjunction with the statutory provisions of Title IV (50 Stat. 912), leads to the inference that no exemptions other than those discussed in the report and those embodied specifically in the act were intended by Congress. In other words, plaintiff's argument would require the inclusion within chapter 32 of a provision of law "inconsistent" with the provisions of that chapter—an application of section 3496 expressly precluded by its own terms.

We have considered the point raised by plaintiff in directing our attention to Treasury Regulation 46 (1940 Ed.), section 316.25. The Commissioner of Internal Revenue there stated that the export exemption contained in section 2705 was applicable to the taxes imposed by chapter 29, subchapter A, by operation of a general carry-over provision contained in the latter chapter (section 3449), 26 U.S.C. §§ 2705, 3449. Though we are not here asked to pass upon the validity of the Regulation, we question the soundness of its interpretation, and therefore express unwillingness to employ its rationale in the instant case.

■ Implicit in our decision is an acknowledgment that carry-over provisions similar to section 3496, though they may be entitled "Other laws applicable," are intended to refer primarily to administrative, rather than substantive, provisions of existing law.[4] See Arrow-Hart & Hegeman Electric Co. v. Comm'r, 7 T.C. 1350. Such appears to have been the thought of the draftsmen responsible for the section here in question. As embodied in the derivative act of September 1, 1937, c. 898, title IV, section 405, what is now section 3496 of the Internal Revenue Code of 1939 was included within a section entitled "Collection of Taxes".[5] So classified, the carry-over provision was probably considered to be administrative in scope.

We are here inclined to view plaintiff's argument as one that should have been more properly addressed to Congress, rather than to this court. White v. United States, 305 U.S. 281, 292, 59 S.Ct. 179, 83 L.Ed. 172. And while recognizing that our decision may work an economic hardship on those engaged in the vessels supplies trade, we nevertheless feel constrained to rule that plaintiff

---

4. This type of provision is common throughout that portion of the Internal Revenue Code of 1939 relating to excise taxes. That there seems to be no uniformity of designation would appear from sections 3449 and 3473 which are entitled "Applicability of administrative provisions". Note also the title preceding the carry-over provision found in section 3483: "Administrative provisions".

5. As enacted, the Sugar Act of 1937, 50 Stat. 903, 914, provided as follows:
"Title IV—Excise Taxes With Respect To Sugar
   *    *    *    *    *
   "Collection of Taxes
"Sec. 405. (a) Except as otherwise provided, the taxes imposed by this title shall be collected by the Bureau of Internal Revenue under the direction of the Secretary of the Treasury. Such taxes shall be paid into the Treasury of the United States.
"(b) All provisions of law, including penalties, applicable with respect to the taxes imposed under title IV of the Revenue Act of 1932, shall, insofar as applicable and not inconsistent with the provisions of this title, be applicable in respect to the tax imposed by section 402. If the tax is not paid when due there shall be added as part of the tax interest at 6 per centum per annum from the date the tax became due until the date of payment.
"(c) The Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, shall prescribe such rules and regulations as may be necessary to carry out all provisions of this title except section 403.
"(d) Any person required, pursuant to the provisions of section 402, to file a return may be required to file such return with and pay the tax shown to be due thereon to the collector of internal revenue for the district in which the manufacturing was done or the liability incurred."

**610**

has failed to establish its alleged exemption.

The petition will be dismissed.

It is so ordered.

LARAMORE, MADDEN, WHITAKER, and LITTLETON, Judges, concur.